MARY W. ROBERTS v. CARLTON N. ROBERTS

No. 7718DC965

(Filed 17 October 1978)

1. Divorce and Alimony § 20.1— permanent alimony awarded—no effect from absolute divorce

The trial court properly determined that an earlier consent order was for permanent alimony and therefore was not superseded by a subsequent decree of absolute divorce where the consent order provided that defendant "shall pay alimony to the plaintiff . . . monthly until the plaintiff remarries or dies,

whichever event first occurs," and a subsequent motion by plaintiff and reply by defendant indicated that both parties understood that the consent order had provided for permanent alimony.

**2. Divorce and Alimony § 19.4— dependent spouse—burden of proof to show changed circumstances**

　　Defendant's contention that the trial court erred in finding that plaintiff was a dependent spouse entitled to alimony is without merit, since an earlier consent order found plaintiff to be a dependent spouse, and, if defendant sought to change that designation, the burden was his to prove a material change in circumstances to justify a finding that plaintiff was no longer a dependent spouse. Defendant not only failed to offer a motion to terminate alimony on the grounds plaintiff was no longer a dependent spouse, but he also produced no evidence to carry his burden of proof.

**3. Divorce and Alimony §§ 20.3, 27— attorney fees—sufficiency of evidence to support award**

　　The trial court's award of attorney fees in an action for child support and alimony was supported by competent evidence that plaintiff lacked the financial resources to pay her attorney and that her attorney devoted in excess of 20 hours to this action.

**4. Divorce and Alimony § 19.4— changed circumstances—sufficiency of evidence—increase in child support and alimony proper**

　　Evidence of changed circumstances was sufficient to support the trial court's modification of monthly alimony and child support payments where such evidence tended to show that plaintiff could no longer provide for herself and her child an adequate standard of living; she could not purchase suitable furnishings and appliances for the home and had insufficient funds to provide dependable, economic transportation for herself and her child; and while plaintiff's assets had become depleted and inflation had outrun her modest salary increases, defendant's financial ability to provide adequate support for his former wife and natural child had increased substantially.

APPEAL by defendant from *Hatfield, Judge.* Judgment entered 18 July 1978, District Court, GUILFORD County. Heard in the Court of Appeals 28 August 1978.

This civil action originated as a suit seeking alimony without divorce and child custody. The original order was entered 7 July 1971. This appeal is from an order entered 22 July 1977 increasing child support and alimony payments after a hearing on plaintiff's motion in the cause.

From the record it appears that plaintiff instituted this action on 7 July 1971. The first order was entered 30 August 1971. The court found plaintiff to be a dependent spouse and the defendant the supporting spouse. Defendant was ordered to give

Roberts v. Roberts

plaintiff possession of the house owned by plaintiff and defendant as tenants by the entirety for the use of her and the two minor children born of the marriage. He was also ordered to make the mortgage payments on the house and pay $25 per week child support and $15 per week alimony. In addition he was ordered to pay $150 attorney's fee.

On 19 April 1973, an order was entered upon plaintiff's prior motions that defendant be found in contempt for failure to make the support payments ordered. Defendant was then $2748 in arrears in support payments and $1462.60 in arrears on the mortgage payments. He had quit his job and entered a beautician's school and was then working as a beautician. The court ordered that he convey to plaintiff his interest in an undeveloped lot owned by plaintiff and defendant as tenants by the entirety for which $2,000 would be credited on his arrearage; that $1,210 of the arrearage be excused and the remaining $1,000 be held in abeyance. The support payments were reduced to $150 per month alimony and child support.

On May 1975, plaintiff moved in the cause for increased payments. Defendant, through counsel, responded averring that although defendant then owned his own business (Headhunter Salon, Ltd.), he had had to borrow substantial amounts and was not then able to take more than $600 per month from the corporation. He further averred that he felt the business had a good future. The parties, on 13 October 1975, entered into a consent judgment and amendment thereto. The order included findings that defendant owned a beauty parlor employing 12 stylists; that plaintiff had a take home pay of $89.52 from her employment with Dillard Paper Company; that the house in which plaintiff and the children resided needed repairs totalling $2,000; and that monthly expenses for plaintiff and the children amounted to $695.57. By consent, defendant was ordered to pay $300 per month for child support; "alimony to the plaintiff in the amount of $100.00 monthly until plaintiff remarries or dies, whichever event first occurs"; all mortgage payments on the house; and not more than $2,000 for the necessary house repairs. The $1,000 arrearage was to remain in abeyance and be a lien on defendant's interest in the property and plaintiff and the children were to have sole and uninterrupted possession of the house until plaintiff remarries or the younger

child reached 18, whichever event occurred first. Defendant was also ordered to pay counsel fees to plaintiff's attorney.

On 8 March 1976, defendant in this action was granted a divorce from plaintiff in this action. The divorce action was not contested by plaintiff in this action and was based on the statutory one-year separation.

On 23 May 1977, plaintiff again moved for increased child support and alimony alleging substantial increase in needs of herself and her minor child and that her income had not kept pace with inflation.

At the hearing for plaintiff's motion in the cause for increased alimony payments, the plaintiff presented evidence which tended to show the following facts concerning her financial status: that plaintiff Mary W. Roberts still resides in the house owned by the entirety with defendant; that her daughter, 12 years of age, and her son, 19 years of age, reside with her; that her full-time job with Dillard Paper Company provides a gross income of $509.38 monthly, an increase of $10 per week since the last order for increased alimony and child support; that plaintiff is unable to afford adequate furnishings for the home; that there is no furniture in the living room, and the den furniture consists of a couch, two end tables, and two lamps; that the only furniture in plaintiff's bedroom is a bed; that there are no drapes in the living room and those in the den are in need of replacement; that plaintiff has no color television, dryer, or dishwasher in the home; that plaintiff's only car is a 1971 Ford Pinto which is in frequent need of expensive repairs and provides poor gas mileage; that plaintiff cannot afford to purchase another car; that her son works part time and pays for his own clothes and living expenses; that plaintiff borrowed $200 to retain an attorney for this action; and that the attorney has spent in excess of 20 hours on this matter.

The evidence presented at the hearing by plaintiff tended to show the following facts concerning the defendant's financial status: that defendant is president and sole shareholder of a corporation known as Headhunter Salon, Ltd.; that he recently became owner of a four bedroom, $60,500 home subject to an outstanding debt of $47,500; that he owns one-half interest in a townhouse valued at $34,000 subject to outstanding debt of $28,500; that he purchased an 18-foot Marlin fiberglass boat for

$2,500 in the spring of 1975; that the corporation owns a 23-foot Glastion boat purchased for $10,500 and subject to an outstanding debt of $7,000 payable over three years; that the corporation owns a 35-foot Holiday house trailer costing between $10,000 and $14,000 subject to an outstanding debt of about $3,000; that defendant owns a 1975 Renegade Jeep which is fully paid for; that he bought and fully paid for an $11,742 Cadillac in March of 1977; that he has in his home, among other things, two color televisions; that defendant draws $2,000 monthly from the corporation; that defendant paid himself a $5,000 bonus in 1976 and probably would do so in 1977; that his savings and loan account is approximately $1,500; that the corporation's savings deposits exceed $10,000; that the corporation has $27,442.65 in retained earnings compared to $10,211.25 in October of 1975; that in the year ended 30 September 1976 defendant's corporation had a net profit of $17,231.40; and that the corporation has a net worth of over $32,000, disregarding the $18,000 written off as a depreciation.

The defendant presented no evidence at the hearing. Defendant, however, filed a motion prior to the hearing seeking to terminate the payment of alimony pursuant to the 13 October 1975 order on the grounds that such payments were alimony pendente lite and the order was thus superseded by the decree granting absolute divorce on 8 March 1976.

From the order of 22 July 1977, denying defendant's motion to terminate alimony pendente lite payments, and from the order of 22 July 1977 granting plaintiff increased child support and alimony, the defendant appeals.

*Jordan, Wright, Nichols, Caffrey and Hill, by William W. Jordan, for plaintiff appellee.*

*James B. Rivenbark and John W. Kirkman, Jr., for defendant appellant.*

MORRIS, Judge.

[1] Defendant first argues that the consent order entered 13 October 1975, compelling defendant to make alimony payments to the plaintiff, was superseded and the rights to alimony pendente lite terminated by the 8 March 1976 decree granting defendant absolute divorce from the plaintiff. The plaintiff argues, and the

district court found, that the 13 October 1975 order was for permanent alimony and was, therefore, not superseded by the subsequent decree of absolute divorce.

If the 13 October 1975 consent judgment was one for permanent alimony, the right to receive alimony payments would not be terminated by the decree of absolute divorce. G.S. 50-11(c). However, if that judgment is merely for alimony pendente lite, the right of plaintiff to receive alimony payments terminated upon entry of the decree of absolute divorce. *Smith v. Smith*, 12 N.C. App. 378, 183 S.E. 2d 283 (1971). We must, therefore, determine whether the consent judgment of 13 October 1975 ordered alimony pendente lite or permanent alimony.

"A consent judgment must be construed in the same manner as a contract to ascertain the intent of the parties." *Bland v. Bland*, 21 N.C. App. 192, 195, 203 S.E. 2d 639, 641 (1974). This Court is not bound by the "four corners" of a consent judgment, but the judgment should be interpreted in light of the surrounding controversy and purposes intended to be accomplished by it. *Price v. Horn*, 30 N.C. App. 10, 226 S.E. 2d 165 (1976), *cert. denied*, 290 N.C. 663, 228 S.E. 2d 450 (1976).

The consent order entered into on 13 October 1975 provided, on the question of alimony, as follows:

"(2) That the defendant shall pay alimony to the plaintiff in the amount of $100.00 monthly *until the plaintiff remarries or dies, whichever event occurs first.*" (Emphasis added.)

The amended order consented to by defendant provided:

"(2) That the Defendant shall pay alimony to the Plaintiff in the amount of $100.00 monthly *until the Plaintiff remarries or dies, whichever event first occurs*; that $50.00 shall be due and payable on the 15th day of each month, and the remaining $50.00 shall be due on the 30th day of each month. . . ." (Emphasis added.)

The language of the original order and amended order clearly comprehended the permanent nature of the order for alimony. Furthermore, if the language of the first order had not been intended by defendant, he had ample opportunity to correct the language before consenting to the amended order.

Roberts v. Roberts

In addition to the actual language of the order, a subsequent motion by the plaintiff and reply by the defendant indicated that both parties understood that the 13 October 1975 order had provided for permanent alimony.

Plaintiff's motion sought ". . . a modification and increase in *permanent* alimony . . . " . This language clearly connotes plaintiff's understanding that, as a result of the prior consent order, she was receiving permanent alimony. Likewise, defendant's understanding that the consent order provided for permanent alimony is apparent from the following reply to plaintiff's motion:

> "(1) That by order of this court dated October 13, 1975, the *permanent* alimony for the plaintiff was ordered and consented to by the parties, and this matter is not now subject to the court's review." (Emphasis added.)[*]

It is clear defendant's assertion that plaintiff's right to alimony was terminated by the decree of absolute divorce must be rejected.

[2] Defendant argues that the district court erred in its finding that plaintiff was, at the time of the hearing, a "dependent spouse" entitled to alimony. G.S. 50-16.1(3); G.S. 50-16.2. The 13 October 1975 consent order found plaintiff to be a dependent spouse. If defendant sought to change that designation, the burden was his to prove a material change in circumstances to justify a finding that plaintiff was no longer a dependent spouse. *Gill v. Gill*, 29 N.C. App. 20, 222 S.E. 2d 754 (1976). Defendant not only failed to offer a motion to terminate alimony on the grounds plaintiff was no longer a dependent spouse, he produced no evidence to carry his burden of proof. This assignment of error is overruled.

The defendant's remaining contentions assert that the district court abused its discretion in ordering defendant to pay attorney's fees, increased child support, increased alimony, and lump sum payments to assist plaintiff in purchasing needed furniture and a suitable automobile for the benefit of the child.

---

[*] Of course, defendant's reply asserting that the alimony payments are not subject to review is incorrect. "The word 'permanent', as a prefix to the word 'alimony,' does not mean that it is permanent in any absolute sense. It is merely permanent as distinguished from alimony *pendente lite* or temporary alimony . . . A court may vacate or modify its prior award of either permanent or temporary alimony upon a showing of changed circumstances." 2 Lee, N.C. Family Law, § 135, p. 38 (1976 Cum. Supp.) (3d Ed. 1963); G.S. 50-16.9(a); *Seaborn v. Seaborn*, 32 N.C. App. 556, 233 S.E. 2d 67 (1977).

---

---

[3] In support of its award of attorney's fees, the trial court made a finding that plaintiff lacked the financial resources to pay her attorney and that her attorney devoted in excess of 20 hours to this action. When the court makes findings which are supported by competent evidence, the award of attorney's fees is binding on this Court in the absence of an abuse of discretion. *Wyche v. Wyche*, 29 N.C. App. 685, 225 S.E. 2d 626 (1976), *cert. denied*, 290 N.C. 668, 228 S.E. 2d 459 (1976). It suffices to say that, in view of the evidence as summarized above, the district court's award is supported by the evidence.

[4] Defendant's final contention is that the plaintiff failed to show changed circumstances which would justify a modification of monthly alimony and child support payments and the two lump sum payments of child support. The determination of the amount of alimony is governed by the following statutory provision:

"§ 50-16.5. . . . (a) Alimony shall be in such amount as the circumstances render necessary, having due regard to the estates, earnings, earning capacity, condition, accustomed standard of living of the parties, and other facts of the particular case."

The determination of child support payments is subject to the following guidelines:

"§ 50-13.4. . . . (c) Payments ordered for the support of a minor child shall be in such amount as to meet the reasonable needs of the child for health, education, and maintenance, having due regard to the estates, earnings, conditions, accustomed standard of living of the child and the parties, and other facts of the particular case."

The statute directs that ". . . the court must consider not only the needs of the wife and children but the estate and earnings of both husband and wife." *Beall v. Beall*, 290 N.C. 669, 674, 228 S.E. 2d 407, 410 (1976). Pursuant to a motion in the cause, the movant is entitled to increased alimony and child support upon a showing of sufficient changed circumstances. G.S. 50-13.7(a); G.S. 50-16.9(a); *McDowell v. McDowell*, 13 N.C. App. 643, 186 S.E. 2d 621 (1972).

It is apparent from the facts in this case that plaintiff is no longer financially capable of providing, for herself and her child, an adequate standard of living. Plaintiff is unable to purchase

suitable furnishings and appliances for the home and has insufficient funds to provide dependable, economic transportation for herself and her child. While plaintiff's assets have become depleted and inflation has outrun her modest salary increases, the defendant's financial ability to provide adequate support for his former wife and natural child has increased substantially. Based on these factors which are supported by the evidence, we cannot say the trial court abused its discretion. Absent such an abuse of discretion, a trial court's award of alimony and child support will not be disturbed on appeal. *Gibson v. Gibson*, 24 N.C. App. 520, 211 S.E. 2d 522 (1975).

For the foregoing reasons, the judgment of the district court is

Affirmed.

Judges HEDRICK and WEBB concur.