ZACHARY, Judge.
 

 *213
 
 Plaintiff Bonnie R. Servatius ("Mother") appeals from that portion of the trial court's order declining to find defendant Stephen K. Ryals ("Father") liable and in civil contempt for failure to pay child support in accordance with the terms of the parties' consent order. We vacate in part and remand for appropriate findings of fact and conclusions of law.
 

 Background
 

 Mother and Father had a child together, who was born on 16 September 2001. The parties were never married. In October 2005, the parties entered into a consent judgment ("the 2005 Order"), pursuant to the terms of which Father was obligated to contribute $600.00
 
 *214
 
 per month in child support, payable to North Carolina Centralized Collections for disbursement to Mother.
 

 On 6 March 2017, Mother filed a Verified Motion for Order to Show Cause in which she moved the trial court to direct Father to (1) appear and show cause why he should not be held in civil or criminal contempt for violating the 2005 Order "by failing to make $77,179.54 in child support payments ... through centralized collections" since November 2005, and (2) "pay arrears owed to [Mother] and her attorney fees in this matter as well." Mother's motion neglected, however, to inform the trial court that the parties' child support case had been heard again in 2016, and that the court had modified the 2005 Order at that time. Without that information, on 6 June 2017, the district court judge presiding found that there was probable cause to believe that Father was in civil contempt for failing to comply with the 2005
 
 *131
 
 Order, and issued an Order to Appear and Show Cause why Father should not be held in contempt.
 

 At the contempt hearing before the Honorable Tracy H. Hewett in Mecklenburg County District Court, Mother testified that Father has been required to pay her a total of $86,400.00 in child support since 1 October 2005, but that she had only received "I think it's four-around $4,600.00" "from Centralized Collections to date." Mother was next asked:
 

 Q. [C]an you tell the Court when a Centralized Collection account came into existence?
 

 A. Early 2015.
 

 Q.... Did a Centralized Collection account exist before then?
 

 A. No.
 

 Q. Okay. So can you tell the Court whether or not, when-before the Centralized account existed, how did you receive child support payments?
 

 A. When he paid it it was with checks.
 

 ....
 

 Q. So since the collections account became active in 2015, have you-can you tell the Court whether or not you've received payments outside of Centralized Collections?
 

 A. No, I haven't.
 

 *215
 
 Mother then testified that she was "not sure" how much child support Father had failed to pay her since 2005; she "just kn[e]w it's many tens of thousands of dollars."
 

 Father, on the other hand, admitted that he had an arrearage, but testified that the current arrearage was "roughly around $12,500.00." Father explained that Mother had been opposing his pending motion to reduce his child support payments for four years, "so that's why [a child support arrearage had] actually grown or even exists." In addition, Father testified that in July 2016, he was adjudicated to have a total child support arrearage of $6,517.07 and that the trial court modified the 2005 Order. According to Father, he was "obligated to continue to pay the $600.00 a month that [he had] always been ordered to pay[,]" in addition to $40.00 each month to be applied toward the arrearage. Father further asserted that Mother's allegation that he owed $77,000.00 in back child support was "[a]bsolutely false" and that he had paid "well over $70,000.00" in child support "over the last 12 or 13 years."
 

 By order entered 1 December 2017, the trial court concluded in pertinent part that
 

 [b]ecause neither party presented any evidence to show the Court how much child support [Father] actually paid or did not pay to [Mother] from November 1, 2005, through February 26, 2017, [Father] is neither liable nor in civil contempt for any failure to pay child support to [Mother].
 

 Mother timely filed notice of appeal.
 

 Mother ordered a partial transcription of certain limited portions of the contempt hearing for inclusion in the record on appeal. While the record indicates that the contempt hearing continued for at least two hours, the four select portions of the transcript that Mother produced only account for roughly fifteen minutes of that proceeding. Thus, there was presumably one hour and forty-five minutes of evidence that was presented to the trial court during the contempt hearing that is unavailable to this Court in our review of the trial court's resulting order. Father did not approve the record on appeal, or participate in its preparation.
 
 [1]
 

 Nevertheless, on appeal, Mother urges this Court to instruct the trial court to enter a judgment in which it (1) "finds that [Father] violated the
 
 *216
 
 parties' [2005 Order] by being in arrears"; and (2) "concludes as a matter of law that [Father] failed to meet his burden of proof and, as a result, is liable for the entire amount of child support arrears pled by [Mother] in her verified motion: $77,179.54[.]" This we decline to do. However, we agree with Mother that the case must be remanded to the trial court with instructions to make appropriate findings of fact and conclusions of law.
 
 *132
 

 Discussion
 

 This Court's review of a civil contempt proceeding
 

 is limited to whether there is competent evidence to support the findings of fact and whether the findings support the conclusions of law. Findings of fact made by the judge in contempt proceedings are conclusive on appeal when supported by any competent evidence and are reviewable only for the purpose of passing upon their sufficiency to warrant the judgment. However, findings of fact to which no error is assigned are presumed to be supported by competent evidence and are binding on appeal. The trial court's conclusions of law drawn from the findings of fact are reviewable
 
 de novo
 
 .
 

 Tucker v. Tucker
 
 ,
 
 197 N.C. App. 592
 
 , 594,
 
 679 S.E.2d 141
 
 , 142-43 (2009) (internal citations, quotation marks, and brackets omitted).
 

 A party may be held in civil contempt for failure to comply with a court order, including a child support order, so long as:
 

 (1) The order remains in force;
 

 (2) The purpose of the order may still be served by compliance with the order;
 

 (2a) The noncompliance by the person to whom the order is directed is willful; and
 

 (3) The person to whom the order is directed is able to comply with the order or is able to take reasonable measures that would enable the person to comply with the order.
 

 N.C. Gen. Stat. § 5A-21(a) (2017). Thus, noncompliance with a court order is a prerequisite before the trial court may hold a party in civil contempt.
 

 Civil contempt proceedings may be initiated by the filing of a "motion and sworn statement or affidavit of one with an interest in enforcing the
 
 *217
 
 order ... and a finding by the judicial official of probable cause to believe there is civil contempt." N.C. Gen. Stat. § 5A-23(a) (2017). Thereafter, the proceeding is commenced "by the order of a judicial official directing the alleged contemnor to appear at a specified reasonable time and show cause why he should not be held in civil contempt[.]"
 

 Id.
 

 "The opposing party must then show cause why he should not be found in contempt."
 
 Plott v. Plott
 
 ,
 
 74 N.C. App. 82
 
 , 85,
 
 327 S.E.2d 273
 
 , 275 (1985). In other words, "[a] show cause order in a civil contempt proceeding which is based on a sworn affidavit and a finding of probable cause by a judicial official shifts the burden of proof to the defendant to show why he should not be held in contempt."
 
 Tucker
 
 ,
 
 197 N.C. App. at 594
 
 ,
 
 679 S.E.2d at 143
 
 (citation and quotation marks omitted). A defendant who chooses not to present evidence as to why he should not be found in contempt does so "at his own peril."
 
 Hartsell v. Hartsell
 
 ,
 
 99 N.C. App. 380
 
 , 387,
 
 393 S.E.2d 570
 
 , 575 (1990),
 
 aff'd per curiam
 
 ,
 
 328 N.C. 729
 
 ,
 
 403 S.E.2d 307
 
 (1991). Following the contempt hearing, the trial court "must enter a finding for or against the alleged contemnor on each of the elements set out in G.S. 5A-21(a)." N.C. Gen. Stat. § 5A-23(e).
 

 In the instant case, upon Mother's Verified Motion for Order to Show Cause, the district court found that there was probable cause to believe that Father was in civil contempt for failing to comply with the 2005 Order, and Father was ordered to appear and show cause as to why he should not be held in contempt. Thereafter, the trial court concluded that Father was "neither liable nor in civil contempt for any failure to pay child support to [Mother]" because "neither party presented any evidence to show the Court how much child support [Father] actually paid or did not pay." Mother contends, however, that because the burden of proof had shifted to Father, the trial court's conclusion that
 
 neither
 
 party presented the requisite evidence reveals that it was compelled to "have found [Father] liable for the entire amount of arrears pled by [Mother]: $77,179.54." Mother's argument is misplaced.
 

 Mother is correct that upon entry of the trial court's Order to Appear and Show Cause, it became Father's burden to establish why he should not be held in contempt.
 
 See
 

 Tucker
 
 ,
 
 197 N.C. App. at 594
 
 ,
 
 679 S.E.2d at 143
 
 . Nonetheless, the trial court was only authorized to find Father in contempt if there was sufficient evidence to support each of the elements required for a finding of civil contempt under N.C. Gen. Stat. § 5A-21(a).
 

 *133
 

 See
 
 N.C. Gen. Stat. § 5A-23(e) ("At the conclusion of the hearing, the judicial official must enter a finding for or against the alleged contemnor on each of the elements set out in G.S. 5A-21(a).");
 
 see also
 

 Carter v. Hill
 
 ,
 
 186 N.C. App. 464
 
 , 466-67,
 
 650 S.E.2d 843
 
 , 844-45 (2007)
 

 *218
 
 ("Findings of fact on these particular [ § 5A-21(a) ] elements are conspicuously absent from the trial court's contempt order in this case. ... [This] error[ ] ... would alone be sufficient to reverse the trial court's entry of the contempt order.").
 

 Here, as an initial matter, the trial court's order is devoid of findings as to whether Father was in compliance with the trial court's most recent order concerning his child support obligation. Father testified that in July 2016, the trial court modified the 2005 Order by increasing Father's child support payments by $40.00 each month, to be applied toward his adjudicated arrears. Mother failed to mention the 2016 Order in her Verified Motion for Order to Show Cause, nor did she include it in the Record on Appeal. Despite being in arrears, if Father made all of his child support payments as ordered in 2016 when his arrears were adjudicated, Father would be in compliance and would not be in contempt of court.
 

 Also absent from the trial court's order are several of the requisite findings under N.C. Gen. Stat. § 5A-21(a). There is no indication whether the purpose of the 2005 Order could still be served by Father's compliance therewith; whether Father's alleged noncompliance was willful; or whether Father was able to comply with the 2005 Order, or to take reasonable measures to do so.
 
 E.g.
 
 ,
 
 McMiller v. McMiller
 
 ,
 
 77 N.C. App. 808
 
 , 810,
 
 336 S.E.2d 134
 
 , 136 (1985) (vacating the contempt order where "[n]o finding was made as to appellant's present ability to pay the arrearages"). Nor are we able to infer any of the relevant findings from the trial court's order.
 
 Cf.
 

 Plott
 
 ,
 
 74 N.C. App. at 85
 
 ,
 
 327 S.E.2d at 275
 
 ("Though the findings are not explicit,
 
 it is clear
 
 that plaintiff both possessed the means to comply with the order and has wilfully refused to do so. While explicit findings are always preferable, they are not absolutely essential where the findings otherwise clearly indicate that a contempt order is warranted." (emphasis added) (citation omitted) ). Mother did not provide this Court with a complete record of the relevant pleadings, including the 2016 Order that appears to have modified Father's child support obligation. Nor did we receive a full transcript of the proceedings before the trial court. The transcript is limited to brief, carefully selected fragments of the hearing, and we are otherwise unable to determine whether the evidence was sufficient to justify the trial court's refusal to hold Father in civil contempt or liable for past-due child support.
 
 See, e.g.
 
 ,
 
 McMiller
 
 ,
 
 77 N.C. App. at 810
 
 ,
 
 336 S.E.2d at 136
 
 ("The record before this court is unclear as to what evidence if any was taken to show [the] defendant's present ability or lack of present ability to pay the arrearage. Therefore, the judgment is vacated and the action remanded to the district court
 
 *219
 
 for further proceedings not inconsistent with this opinion.");
 
 Frank v. Glanville
 
 ,
 
 45 N.C. App. 313
 
 , 316,
 
 262 S.E.2d 677
 
 , 679 (1980) ("It is not clear from the record in this case that [the] defendant has the ability to comply with the contempt order, ever had the ability, or will ever be able to take reasonable measures that would enable him to comply. For that reason and because no finding of fact detailing [the] defendant's ability to comply with the contempt order was made, this case is reversed and remanded[.]").
 

 Accordingly, because we are unable to ascertain the propriety of the trial court's order declining to hold Father in civil contempt or liable for past-due child support payments, we vacate that portion of the order and remand to the trial court for entry of an order containing the necessary findings of fact and conclusions of law, consistent with this opinion. We leave it to the trial court's discretion whether to accept additional evidence and arguments on remand.
 

 VACATED IN PART AND REMANDED.
 

 Judges CALABRIA and TYSON concur.
 

 [1]
 

 Father "fail[ed] to serve either notices of approval or objections, amendments, or proposed alternative records on appeal" within thirty days after service, and thus Mother's "proposed record on appeal ... constitutes the record on appeal." N.C.R. App. P. 11(b).